IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, a New York Banking institution, as Trustee for the benefit of CHL Mortgage Pass-Through Trust 2007-3 Mortgage Pass-Through Certificates, Series 2007-3,<br><br>          Plaintiff,<br><br>     vs.<br><br>STEVEN J. SAKALA; TERESA ANN COLLINS; MARY JANET COLLINS; DANA MARIA MITCHELL; DOUGLAS B. HACKETT, as Trustee of the Honaunau School Road Trust; JOHN DOES 1-50; JANE DOES 1-50; and DOE ENTITIES 1-50,<br><br>          Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CV. NO. 11-00618 DAE-BMK<br>(Foreclosure) |

ORDER GRANTING PLAINTIFF'S MOTIONS TO DISMISS
DEFENDANTS' COUNTERCLAIMS

On April 23, 2012, the Court heard Plaintiff's Motions to Dismiss

Defendants' Counterclaims. Patricia J. McHenry, Esq., appeared at the hearing on

behalf of Plaintiff Bank of New York Mellon ("BNY"); Lisa M. Volquardsen,

Esq., appeared by telephone on behalf of Defendants Steven J. Sakala, Teresa Ann

Collins, Mary Janet Collins, Dana Maria Mitchell, and Douglas B. Hackett, as

Trustee of the Honaunau School Road Trust. After reviewing the motions and the

supporting and opposing memoranda, the Court **GRANTS** Plaintiff's Motions to

Dismiss. (Docs. ## 36, 42.)

<u>BACKGROUND</u>

On February 7, 2007, Defendant Steven J. Sakala ("Sakala") executed

a promissory note in favor of Countrywide Home Loans, Inc. ("Countrywide") in

the principal amount of $910,000.00. ("FAC," Doc. # 4-1.) To secure

payment on the note, on the same day, Defendants Sakala, Dana Maria Mitchell,

Teresa Ann Collins, and Mary Janet Collins (collectively, "Defendants") executed

a mortgage encumbering real property located at 83-1064 Honaunau School Road,

Honaunau, Hawaii 96726 ("Subject Property") in favor of Countrywide. (FAC,

Doc. # 4-2.) The mortgage was recorded in the State of Hawaii Bureau of

Conveyances on February 16, 2007, as Document No. 2007-030068. (<u>Id.</u>)

Countrywide Home Loans, Inc. is listed on the mortgage as the originating lender

and Mortgage Electronic Registration Systems, Inc. ("MERS") is listed as the

mortgagee "acting solely as nominee for Lender and Lender's successors and

assigns." (<u>Id.</u>)

On August 8, 2009, MERS executed an assignment, which purports to transfer its interest in the mortgage to Plaintiff The Bank of New York Mellon as Trustee for the Benefit of CHL Mortgage Pass-Through Trust 2007-3 Mortgage Pass-Through Certificates, Series 2007-3 ("BNY").  (FAC, Doc. # 4-3.)  The assignment was recorded in the State of Hawaii Bureau of Conveyances on September 17, 2009, as Document No. 2009-142800.  (Id.)  On or about September 10, 2009, BNY began non-judicial foreclosure proceedings against the Subject Property because of Sakala's failure to make payments under the Note.  (Id.)

On September 16, 2010, Sakala filed a complaint against BNY, MERS, and BAC Home Loan Servicing in the Third Circuit Court for the State of Hawaii to stop BNY's non-judicial foreclosure of the Subject Property.  (Cv. No. 10-00578, Doc. # 1-2.)  On October 6, 2010, Defendants removed that action to this Court.  (Cv. No. 10-00578, Doc. # 1.)  On February 22, 2011, the Court issued an Order Granting BAC and MERS' Motion to Dismiss and dismissing the Complaint without prejudice as against all Defendants.  (Cv. No. 10-00578, Doc. # 40.)  Sakala filed an Amended Complaint on March 24, 2011 and a Second Amended Complaint on June 23, 2011.  (Cv. No. 10-00578, Docs. ## 45, 80.)  On October 4, 2011, this Court issued an order dismissing the Second Amended Complaint with leave to amend.  (Cv. No. 10-00578, Doc. # 98.)  Since Plaintiff

failed to file an amended complaint or take any further action in the case, on December 30, 2011, the Court issued an order dismissing the action with prejudice.[1]

On June 13, 2011, while the federal action was still pending, Sakala filed a Certified Conversion Petition in state court seeking to convert BNY's non-judicial foreclosure proceedings to judicial foreclosure proceedings. (Doc. # 20-3.) On September 23, 2011, the state court entered a Judgment converting the non-judicial foreclosure to a judicial foreclosure and ordering BNY to file a judicial foreclosure complaint within thirty days. (Id.)

On October 17, 2011, BNY initiated the instant foreclosure action against the Defendants, alleging that Sakala has defaulted on his obligations under the Note and Mortgage and now owes BNY in the principal amount of $ 888,960.37 ("Federal Foreclosure Action"). (FAC ¶¶ 16–18.)

On October 21, 2011, four days after the instant action was filed, BNY filed a judicial foreclosure complaint against the Defendants in state court in compliance with the state court Judgment dated September 23, 2011 (the "State

---

[1]Since the parties did not adequately brief the issue of whether Sakala's Counterclaims in the instant action are barred by the doctrine of res judicata, the Court shall not reach this issue at this time. However, the parties may address this issue at a later date if appropriate.

Foreclosure Action"). (Doc. # 20-3.) The state court subsequently granted BNY's motion to stay the State Foreclosure Action pending a decision in the present Federal Foreclosure Action. (Doc. # 20-8.)

On November 16, 2011, Sakala filed a Motion to Dismiss the Federal Foreclosure Action for Lack of Subject Matter Jurisdiction and Forum Non Coveniens. ("Mot.," Doc. # 11.) BNY filed an Opposition to his Motion on January 23, 2012. ("Opp'n," Doc. # 20.) Sakala did not file a Reply. On February 3, 2012, the Court issued an Order Denying Sakala's Motion to Dismiss. (Doc. # 23.)

On February 17, 2012, Sakala filed an Answer to the FAC and a Counterclaim against BNY alleging the following causes of action: (1) Fair Debt Collection Practices Act violations, (2) Unfair and Deceptive Business Practices, (3) Slander of Title, and (4) Fraud ("Sakala's Counterclaim"). (Doc. # 31.) BNY filed a Motion to Dismiss Sakala's Counterclaim on March 8, 2012. ("First MTD," Doc. # 36.)

On March 9, 2012, Defendants Mary Janet Collins, Teresa Ann Collins, Douglas B. Hackett, and Dana Marie Mitchell filed a separate Answer to the FAC and a Counterclaim against BNY alleging the same four causes of action as Sakala ("Remaining Defendants' Counterclaim"). (Doc. # 38.) BNY filed a

Motion to Dismiss the Remaining Defendants' Counterclaim on March 19, 2012.

("Second MTD," Doc. # 42.) That same day, Defendant Douglas Hackett filed a

Joinder to Sakala's February 17, 2012 Answer. (Doc. # 44.)

On April 5, 2012, Sakala and the Remaining Defendants filed an

untimely "Objection" to both of BNY's Motions to Dismiss.[2] (Doc. # 46.) BNY

filed a Reply in Support of both Motions to Dismiss on April 9, 2012. (Doc. # 47.)

STANDARD OF REVIEW

I.    Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a

motion to dismiss will be granted where the plaintiff fails to state a claim upon

which relief can be granted. Review is limited to the contents of the complaint.

See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).

A complaint may be dismissed as a matter of law for one of two

reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a

cognizable legal claim." Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530,

---

[2]Pursuant to Local Rule 7.4, the Opposition was due on or before April 2, 2012. However, Defendants' Opposition, labeled an "Objection," was not filed until April 5, 2012. The Court shall overlook Defendants' untimely filing in this instance and deny Plaintiff's request to strike Defendants' Opposition brief. However, Defendants are warned that if in the future they fail to file briefing in a timely manner without good cause shown, the Court will not consider it.

534 (9th Cir. 1984) (citation omitted).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable

inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief. See Twombly, 550 U.S. at 570. A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief. Id. at 586. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558 (citation omitted). If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect" (internal quotations and citations omitted)).

II.     Federal Rule of Civil Procedure 8

Rule 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that each allegation "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed sua sponte for failure to satisfy Rule 8. Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th

8

Cir. 2008) (quoting <u>Gillibeau v. City of Richmond</u>, 417 F.2d 426, 431 (9th Cir. 1969); <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995) (stating that a district court has the power to <u>sua sponte</u> dismiss a complaint for failure to comply with Rule 8 where the complaint is so confused, ambiguous, or unintelligible that its true substance is well disguised); <u>see also</u> <u>McHenry v. Renne</u>, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written . . . , prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); <u>Nevijel v. N. Coast Life Ins. Co.</u>, 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [Rule 8] may be dismissed with prejudice[.]").

Put slightly differently, a district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the wrongs they have allegedly committed.  <u>See</u> <u>McHenry</u>, 84 F.3d at 1178–80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); <u>cf.</u> <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did]

not qualify as overly verbose, confusing, or rambling").  Rule 8 requires more than

"the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers

labels and conclusions or a formulaic recitation of the elements of a cause of action

will not do."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations and

quotations omitted).  "The propriety of dismissal for failure to comply with Rule 8

does not depend on whether the complaint is wholly without merit."  McHenry, 84

F.3d at 1179.

The court may "begin by identifying pleadings that, because they are

no more than conclusions, are not entitled to the assumption of truth."  Iqbal, 129

S. Ct. at 1950.  Legal conclusions must be supported by factual allegations.  Id.

"When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to

relief."  Id.

III.    Federal Rule of Civil Procedure 9(b)

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must

state with particularity the circumstances constituting fraud or mistake."  Fed. R.

Civ. P. 9(b).  Under Ninth Circuit law, "Rule 9(b) requires particularized

allegations of the circumstances constituting fraud."  In re GlenFed, Inc. Sec.

Litig., 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc), superseded on other grounds by 15 U.S.C. § 78u-4.

In their pleadings, plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. Id. at 1548 (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)). "[T]he circumstances constituting the alleged fraud [must] 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 10104, 1019 (9th Cir. 2001)); see also Moore, 885 F.2d at 540 (finding that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); Walling v. Beverly Enter., 476 F.2d 393, 397 (9th Cir. 1973) (finding that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## DISCUSSION

Although Defendant Sakala and the Remaining Defendants have filed two separate Counterclaims, the Court will address these Counterclaims concurrently because they allege identical causes of action.[3] All the Defendants allege the following four counterclaims: (1) Fair Debt Collection Practices Act violations, (2) Unfair and Deceptive Business Practices, (3) Slander of Title, and (4) Fraud. (See Docs. # 31, 38.) Plaintiff argues that these four counterclaims should be dismissed because they fail to state a claim for relief. (See Docs. # 36, 42.)

---

[3] For simplicity, the Court will refer to the two Counterclaims as "Counterclaim."

I.    Count 1: Fair Debt Collection Practices Act

In Count 1, Defendants allege that Plaintiff committed violations of the Fair Debt Collection Practices Act ("FDCPA").  (See Doc. # 31 ¶¶ 46–49, Doc. # 38 ¶¶ 46–49).  Specifically, Defendants allege that Plaintiff:

> attempted to collect a debt in a manner not permitted by law in that they do not allege ownership of the Note in accordance with the PSA's terms and attempt to assign an interest in the mortgage that no longer exists having been sold as a matter of record[.]

(Doc. # 31 ¶ 47(a), Doc. # 38 ¶ 47(a).)  Defendants further allege that

> Plaintiffs [sic] violated the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of debt, as prohibited by § 1692e, including but not limited to falsely representing the character, amount, or legal status of a debt, as prohibited by 15 U.S.C. § 1692e(2)(A), and used false representation or deceptive means to collect or attempt to collect a debt from the consumer, as prohibited by 15 U.S.C. § 1692e(10).

(Doc. # 31 ¶ 48, Doc. # 38 ¶ 48.)

Preliminarily, insofar as Defendants' FDCPA claim is based on an alleged violation of the PSA, this claim fails because Defendants lack standing to raise a violation of the PSA.[4]  Specifically, they do not allege that they are parties

_____

[4]In reaching this conclusion, the Court rejects Defendants' contention that they need not establish standing to assert their counterclaims because they are not the party seeking to invoke the jurisdiction of this court.  Defendants stand in the position of Plaintiffs for purposes of their counterclaim and therefore must allege facts sufficient to establish standing to prosecute these affirmative claims.  See,

(continued...)

to the PSA, nor have they alleged facts establishing that they are intended third party beneficiaries of the PSA. Under these circumstances, courts have found that borrowers cannot assert a claim arising under the PSA. See Anderson v. Countrywide Home Loans, 2011 WL 1627945, at *4 (D. Minn. Apr. 8, 2011) (concluding that plaintiffs did not have standing to challenge the validity of an assignment made in contravention of a PSA because they were not parties to the PSA); Greene v. Home Loan Serv., Inc., 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs are not a party to the [PSA] and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement."); Long v. One West Bank, 2011 WL 3796887, at *4 (N.D. Ill. Aug. 24, 2011) (rejecting argument that assignment executed after trust was closed in violation of the PSA rendered transaction invalid, reasoning that non-parties to the PSA lacked standing to challenge the assignment); Juarez v. U.S. Bank Nat'l Ass'n, 2011 WL 5330465, at *4 (D. Mass. Nov. 4, 2011) (reasoning that plaintiff "does not have a legally protected interest in the assignment of the mortgage to bring an action arising under the PSA"); Correia v. Deutsche Bank Nat'l Tr. Co., 452 B.R. 319,

---

[4](...continued)
e.g., DC3 Entertainment, LLC v. John Galt Entertainment, Inc., 412 F. Supp. 2d 1125, 1151 (W. D. Wash. 2006) (granting motion to dismiss Defendants' counterclaim for lack of standing); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 269 F. Supp. 2d 1213, 1221–25 (C.D. Cal. 2003) (same).

324–25 (B.A.P. 1st Cir. 2011) (rejecting argument by debtors that mortgage assignment was invalid based upon non-compliance with PSA, as debtors were neither parties, nor third-party beneficiaries, of the PSA); cf. Cooper v. Bank of New York Mellon, 2011 WL 3705058, at *17 (D. Haw. Aug. 23, 2011) (dismissing breach of contract count brought by delinquent mortgagors for breach of PSA, reasoning that mortgagors were not third-party beneficiaries of PSA and thus had no standing to enforce its terms). And even assuming that Defendants have standing to assert claims arising under the PSA, this court as well as other courts have held that noncompliance with the terms of a PSA is not relevant to the validity of an assignment. See Abubo v. Bank of New York Mellon, 2011 WL 6011787 *8 (D. Haw. Nov. 30, 2011) (holding that plaintiffs may not set aside an assignment of the mortgage on the bassi that the terms of the PSA were not followed); Anderson, 2011 WL 1627945 at *4 (holding that there was "no authority that an assignment made in contravention of a PSA is invalid"); Long, 2011 WL 3796887, at *4 (same).

Defendants also allege that Plaintiff violated the FDCPA by "using false, deceptive, or misleading representations or means in connection with the collection of the debt." (Doc. # 31 ¶ 48, Doc. # 38 ¶ 48.) However, insofar as this claim sounds in fraud, it is subject to the heightened pleading requirements of Rule

15

9.  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when where, and how' of the misconduct charged.") (internal quotation marks and citation omitted).  The allegations in Defendants' counterclaim do not specify who made these allegedly false representations, when and where such representations were made, and how these representations were used to deceptively collect a debt from Defendants.

Moreover, Defendants have failed to establish the requisite elements of a FDCPA claim.  The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To state a claim for a violation of the FDCPA, the plaintiff must allege that the defendant is a "debt collector" within the meaning of the FDCPA.  <u>Heintz v. Jenkins</u>, 514 U.S. 291, 294 (1995).  The FDCPA defines a "debt collector" as follows:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ... The term does not

include- (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor

15 U.S.C. § 1692(a)(6).

Defendants do not allege that Plaintiff was, in fact, a debt collector, nor do they allege facts sufficient to support a conclusion that BNY qualifies as a "debt collector" within the meaning of the FDCPA.  This proposition is not self-evident as many courts across the country have held that mortgage companies are not debt collectors liable under the FDCPA.  See Williams v. Countrywide, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007) ("lenders and mortgage companies are not 'debt collectors' within the meaning of the FDCPA"); Hulse v. Ocwen Fed Bank FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (noting that the "activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA); Caraang v. PNC Mortg., 795 F. Supp. 2d 1098, 1123 (D. Haw. June 20, 2011) ("A mortgage broker does not fall within the FDCPA's definition of a "debt collector"); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); Maguire v. Citicorp. Retail Svcs., 147 F.3d

232, 236 (2d Cir. 1998) (stating that the FDCPA does not apply to creditors)); see also Green v. Alliance Title, 2010 WL 3505072, at *18 (E.D. Cal. Sept. 2, 2010) ("The definition [of debt collector] explicitly excludes creditors as well as loan originators or assignees who obtained the right to collect on loan when it was not in default."). Because Defendants' counterclaims are completely devoid of any allegations to suggest that Plaintiff is a "debt collector" within the meaning of the FDCPA, this claim fails.

Accordingly, the Court **DISMISSES** Count 1 of Defendants' Counterclaim.

II.    Count 2: Unfair and Deceptive Business Practices

In Count 2, Defendants allege that Plaintiff engaged in unfair or deceptive acts and practices ("UDAP") in violation of Hawaii Revised Statutes § 481A, et seq.  (Doc. # 31 ¶ 51, Doc. # 38 ¶ 51.)  Specifically, Defendants allege: (1) that all violations of the FDCPA alleged in Counterclaim 1 are also violations of the Hawaii Unfair and Deceptive Business Practices and (2) that each of the three foreclosure actions filed against Defendants on behalf of Plaintiff "was done to create confusion, and each is an unfair and deceptive act or practice."  (Doc. # 31 ¶¶ 52–53; Doc. # 38 ¶¶ 52–53.)

To the extent that Defendants' UDAP counterclaim is based on Plaintiff's alleged violations of the FDCPA, it fails for the reasons set forth above. Additionally, the Court notes that the allegations set forth in Defendants' second counterclaim are insufficient to satisfy the basic pleading requirements of Rules 8 and 12(b)(6). For instance, Defendants assert that Plaintiff filed the foreclosure actions against Defendants "to create confusion," but fails to explain what this means or allege any facts to substantiate or otherwise elaborate on this bald assertion. This is precisely the type of "the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has said is insufficient to satisfy Rule 8. See Iqbal, 129 S. Ct. at 1949. Such vague and conclusory allegations cannot, in and of themselves, state a claim for relief. Therefore, this constitutes an independently sufficient reason to dismiss Defendants' UDAP counterclaim. See McGlinchy, 845 F.2d at 810 ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.")

Furthermore, none of the purported wrongdoings alleged by Defendants violate Hawaii Revised Statutes § 481A–3. This statute enumerates conduct that constitutes deceptive trade practices and contains a catchall clause in § 481A–3(a)(12), which states that "any other conduct which similarly creates a likelihood of confusion or of misunderstanding" is a deceptive trade practice. The

Hawaii Supreme Court has defined a "deceptive practice" as "'an act causing, as a natural and probable result, a person to do that which he [or she] would not otherwise do.'" Balthazar v. Verizon Hawaii, Inc., 123 P.3d 194, 202 (Haw. 2005) (quoting Hawaii Comm. Fed. Credit Union v. Keka, 11 P.3d 1, 16 (Haw. 2000)).

Defendants' UDAP claim is based, in part, on their allegation that Plaintiff brought three separate foreclosure actions against Defendants to create confusion and that therefore, each lawsuit is an unfair or deceptive act or practice. While a well-supported allegation that a party filed a harassing and meritless lawsuit may establish a right to relief under UDAP, Defendants' counterclaim fails because they have not alleged any facts establishing that the lawsuits were frivolous or that they were initiated for the purpose of deceiving the Defendants into doing something that they would not otherwise do. See, e.g., Trenwick American Reinsurance Corp. v. IRC, Inc., 764 F. Supp. 2d 274, 307 (D. Mass. 2011) (holding that bringing a frivolous lawsuit can constitute an unfair and deceptive trade practice); United States v. Ward, 618 F. Supp. 884, 907 (E.D.N.C. 1985) ("The institution of a lawsuit may be the basis for an unfair trade practices claim if the lawsuit is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor."); Sheet Metal Workers Local 441 Health & Welfare Plan v. Glaxosmithkline, PLC,

737 F. Supp. 2d 380, 406 (E.D. Pa. 2010) (allegation that manufacturer filed baseless litigation against competitor in order to prevent market entry of the competitor's product was sufficient to state a claim under state deceptive trade practices act). There are no allegations in the counterclaim which suggest that the foreclosure proceedings initiated by the Plaintiff fall within any of the enumerated categories of conduct constituting "deceptive trade practices" under Hawaii Revised Statutes § 481A–3, nor do they establish that those proceedings similarly created confusion or misunderstanding.

Accordingly, the Court **DISMISSES** Count 2 of Defendants' Counterclaim.

III.    <u>Count 3: Slander of Title</u>

In their third counterclaim, Defendants allege that "Plaintiff has slandered Defendants' title and right to the premises" through commencing foreclosure actions. (Doc. # 31 ¶ 59, Doc. # 38 ¶ 59.) Defendants contend that

> Plaintiffs [sic] have communicated to third parties by the public filing (three times) of this foreclosure action the false statement that Plaintiff Bank of New York Mellon as Trustee for the benefit of CHL mortgage Pass-Through Trust 2007-3 Pass-Through Certificates, Series 2007-3 is the owner of Defendants' Note and Mortgage and is entitled to foreclose thereon.

(Doc. # 31 ¶ 56, Doc. # 38 ¶ 56.)

As with the allegations in the previous two counts, the allegations in Count 3 are based on Defendants' contention that Plaintiff violated the PSA to which Defendants are not parties. As noted above, since Defendants are not parties to the PSA and do not offer any allegations suggesting that they are intended beneficiaries of that contract, Defendants may not assert a claim arising from any purported breach of that agreement. Further, even if the terms of the PSA were not followed, it does not necessarily follow that the assignment is invalid.

Moreover, Defendants have failed to establish the required elements of a slander of title claim. Slander of title is "a tortious injury to property resulting from unprivileged, false, malicious publication of disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage." Southcott v. Pioneer Title Co., 21 Cal. Rptr. 917, 919 (Cal. App. 1962) (citations omitted). "To establish slander of title at common law, a plaintiff must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." B & B Inv. Group v. Gitler, 581 N.W.2d 17, 20 (Mich. App. 1998); see also Manhattan Loft, LLC v. Mercury Liquors, Inc., 93 Cal. Rptr. 3d 457, 464 (Cal. App. 2009) (establishing elements as "(1) a publication, (2) which is without privilege or

justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.").

Defendants do not allege facts to support a finding that Plaintiff published a false statement, nor do they offer factual allegations demonstrating that Plaintiff acted with malice. As discussed above, the allegations regarding the PSA do not establish that Plaintiff lacks standing to foreclose on the Subject Property. Therefore, Defendants have not shown that the representations made by Plaintiff in the foreclosure proceedings were false. With respect to malice, Defendants merely allege that "Plaintiff has acted with reckless disregard for the truth or intentionally and maliciously . . . in order to maintain the facade of a lawful mortgage backed securitization to gain profits for themselves and investors[.] (Doc. # 31 ¶ 58, Doc. # 38 ¶ 58.) This conclusory allegation is entirely insufficient to create an inference that Plaintiff acted with malice. See Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 555–56 (holding that a plaintiff must do more than recite the formulaic elements of a cause of action). In short, Defendants have failed to state a claim for relief based on slander of title. The Court therefore DISMISSES Count 3 of the Counterclaim.

IV.     Count 4: Fraud

        In Count 4 of the Counterclaim, Defendants allege that Plaintiff

fraudulently signed the Note in order to prove Plaintiff's standing to foreclose.

(Doc. # 31 ¶¶ 61–64, Doc. # 38 ¶¶ 61–64.)  Defendants allege that Plaintiff

"produc[ed] an unendorsed Note as the 'true and correct copy' of the original Note

in three different foreclosure actions, including twice in the instant action," and

"suddenly, magically, three years later, an indorsement appears, with claims that it

had been indorsed from the moment it was received by Plaintiff, allegedly on

February 28, 2007.  (Doc. # 31 ¶ 62, Doc. # 38 ¶ 62.)  Defendants contend that

"Plaintiff is attempting to have the Court and the Defendants rely upon its

representation that it was indorsed many years ago in order to prove its standing to

foreclose."  (Doc. # 31 ¶ 64, Doc. # 38 ¶ 64.)

        Under Hawaii law, the elements of a fraud claim are that: "(1) false

representations were made by defendants, (2) with knowledge of their falsity (or

without knowledge of their truth or falsity), (3) in contemplation of plaintiff's

reliance upon these false representations, and (4) plaintiff did rely upon them."

Shoppe v. Gucci Am., Inc., 14 P.3d 1049, 1067 (Haw. 2000) (internal quotation

marks and citations omitted).  Fraud claims, "in addition to pleading with

particularity, also must plead plausible allegations. That is, the pleadings must state

24

'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'" <u>Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting <u>Twombly</u>, 550 U.S. 544, 566, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Preliminarily, the Court notes that Defendants' allegations of fraud do not meet Rule 9's heightened pleading standards, which require a pleading to "identify the who, what, when, where and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." <u>Cafasso</u>, 637 F.3d at 1055 (internal quotation marks omitted). For example, Defendants assert that Plaintiff presented the endorsed Note "with claims that it had been indorsed from the moment it was received by Plaintiff, allegedly on February 28, 2007" but Defendants do not allege who made these purportedly false statements, where they were made, or when they were made. (<u>See</u> Doc. # 31 ¶ 62, Doc. # 38 ¶ 62.) Defendants' bald assertion devoid of further factual enhancement is simply insufficient to meet the pleading standards for fraud claims. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949.

Moreover, even assuming that Plaintiff produced a different version of the Note than that offered in prior state court actions, this alone is not sufficient to raise an inference of fraud. <u>See, e.g.</u>, <u>Aganos v. GMAC Residential Funding</u>

Corp., 2008 WL 4657828, at *8 (D. Haw. Oct. 22, 2008) (holding that the fact that a mortgage lender produced a copy of the note with a different endorsement than the copies of the note produced during a prior state court action did not demonstrate a fraud). Defendants do not allege facts that would give rise to an inference that BNY is <u>not</u> currently the holder of the Note, nor do they explain how BNY's alleged recent endorsement of the Note gives rise to a cause of action for fraud.

Finally, Defendants do not allege any facts establishing that they in fact relied to their detriment on Plaintiff's allegedly fraudulent statements about when the Note was endorsed. Rather, Defendants merely contend that "Plaintiff is attempting to have the Court and the Defendants rely upon its representations that it was indorsed many years ago in order to prove its standing to foreclose." (Doc. # 31 ¶ 64, Doc. # 38 ¶ 64.) This is insufficient to establish detrimental reliance and fails to meet the heightened pleading standards for fraud claims.

Accordingly, the Court **DISMISSES** Count 4 of the Counterclaim.

V.    <u>Leave to Amend</u>

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Further, "requests for leave should be granted with extreme liberality." <u>Moss v. U.S. Secret Service</u>, 572 F.3d

962, 972 (9th Cir. 2009).  "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment."  Id. "However, 'liberality in granting leave to amend is subject to several limitations.'" Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)).  "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay."  Id. (citing Ascon Props., 866 F.2d at 1160).  "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.' "  Id. (quoting Ascon Props., 866 F.2d at 1160).

The Court recognizes that it may be possible for Defendants to state a claim if provided the opportunity to amend their Counterclaims.  The Counterclaim is therefore **DISMISSED WITHOUT PREJUDICE** in this action with leave to amend no later than thirty (30) days from the filing of this Order.  Failure to do so and to cure the pleading deficiencies will result in dismissal of this action with prejudice.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's

Motions to Dismiss, and **GRANTS** Defendants leave to amend their

counterclaims.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, April 24, 2012.

_____
David Alan Ezra
United States District Judge

The Bank of New York Mellon v. Steven J. Sakala, Teresa Ann Collins, Mary Janet Collins, Dana Maria Mitchell, Douglass B. Hackett, as trustee, Cv. No. 11-00618-DAE-BMK; (1) GRANTING PLAINTIFF'S MOTIONS TO DISMISS, AND (2) GRANTING DEFENDANTS LEAVE TO AMEND